**SOUTH DAVIS COMMUNITY HOSPITAL, INC./ROMERO,**
Petitioner,

v.

**DEPARTMENT OF HEALTH, DIVISION OF HEALTH CARE FINANCING,**
Respondent.

No. 930013–CA.

Court of Appeals of Utah.

Feb. 11, 1994.

George K. Fadel (argued), Bountiful, for petitioner.

Jan Graham, State Atty. Gen., J. Stephen Mikita (argued), Douglas M. Springmeyer, Asst. Atty. Gen., Salt Lake City, for respondent.

Before BILLINGS, GREENWOOD and RUSSON,[1] JJ.

## OPINION

RUSSON, Associate Presiding Judge:

South Davis Community Hospital, Inc. (South Davis), seeks review of a decision of the Utah Department of Health, Division of Health Care Financing (DHCF), denying Medicaid reimbursement for medical care that South Davis provided Catherine Romero for the period of August 1, 1989 to October 31, 1989. We affirm.

## FACTS

South Davis is a licensed specialty hospital and Medicaid provider that offers medical care at acute and skilled care levels. Romero has been a patient at South Davis receiving care for chronic, severe degenerative neuromuscular disease since May 11, 1983. Although Romero has been Medicaid eligible at all times relevant to this matter, her medical costs were paid through private health insurance coverage up until the period in dispute. However, when the limits of that insurance policy were exhausted, Romero's family applied for Medicaid coverage, effective August 1, 1989.

From August 1, 1989 to October 31, 1989, South Davis provided Romero with what it termed an acute level of medical care. On November 1, 1989, South Davis downgraded the level of care from acute to skilled. On December 27, 1989, South Davis applied to

---

1. Judge Russon authored this opinion prior to his appointment to the Utah Supreme Court.

DHCF for Medicaid reimbursement for the cost of the care it had provided to Romero from August 1, 1989 to October 31, 1989. In an attempt to remedy its failure to meet DHCF's preadmission physician certification requirement, South Davis included in its application Romero's medical records for the dates in question. On May 7, 1990, after determining that (1) there was no preadmission physician certification for acute care and (2) South Davis had not provided acute care to Romero, DHCF, pursuant to its administrative rules, denied South Davis's application. On June 30, 1990, at South Davis's request, a formal administrative hearing was held regarding South Davis's application for Medicaid reimbursement, and, on December 8, 1992, the hearing officer recommended that the DHCF decision be upheld. On December 23, 1992 the DHCF interim executive director affirmed the hearing officer's recommendation, citing as the reasons for its action: (1) Romero's medical records lacked the requisite physician certification or recertification to justify reimbursement at any rate; and (2) Romero's medical condition did not require, nor did Romero receive, care at an acute level.

South Davis seeks review of that decision, asserting: (1) it is entitled to reimbursement for at least the cost of the care rendered; (2) DHCF's findings of fact do not support its conclusions of law; (3) the documents provided by Romero's physician should be deemed appropriate certification for reimbursement; and (4) under the facts of this case, refusal to reimburse South Davis amounts to a forfeiture or penalty, an action not favored at law. Simply put, the issue before us is whether DHCF properly denied South Davis reimbursement for care it provided Romero for the period in question.

## STANDARD OF REVIEW

The Utah Administrative Procedures Act (UAPA) is applicable to all proceedings commenced on or after January 1, 1988. Utah Code Ann. § 63-46b-22(1) (1993). We therefore review South Davis's petition under UAPA.

Utah Code Ann. § 63-46b-16(4) (1993) provides:

The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

. . . .

(h) the agency action is:

(i) an abuse of the discretion delegated to the agency by statute. . . .

■ Under UAPA, we review an agency decision interpreting statutory law under a correction of error standard, unless the legislature has granted the agency discretion in interpreting and administering the statute. *Putvin v. Utah State Tax Comm'n,* 837 P.2d 589, 590 (Utah App.1992); *accord Nucor Corp. v. Utah State Tax Comm'n,* 832 P.2d 1294, 1296 (Utah 1992); *Morton Int'l, Inc. v. Utah State Tax Comm'n,* 814 P.2d 581, 588 (Utah 1991). Thus, we give deference to an agency's statutory construction only "when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Morton,* 814 P.2d at 589; *accord Cross v. Board of Review,* 824 P.2d 1202, 1204 (Utah App.1992). When such a grant of discretion exists "we will not disturb the [agency's] application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Morton,* 814 P.2d at 588; *accord Cross,* 824 P.2d at 1204. An explicit grant of discretion exists "when a statute specifically authorizes an agency to interpret or apply statutory language." *King v. Industrial Comm'n,* 850 P.2d 1281, 1287 (Utah App.1993). In *Morton,* the Utah Supreme Court gave, as one example of a statutory grant of discretion, the statutory language, " '*as determined by the commission.*' " *Morton,* 814 P.2d at 588 n. 40 (quoting Utah Code Ann. § 59-12-104(16) (Supp. 1987)).

■ Turning to the case at bar, DHCF was created under the Medical Assistance Act to "be responsible for implementing, organizing, and maintaining the Medicaid program." Utah Code Ann. § 26-18-2.1 (1989). The act provides that DHCF "shall establish . . . a program to safeguard against unneces-

sary or inappropriate use of Medicaid services, excessive payments, and unnecessary or inappropriate hospital admissions or lengths of stay. [DHCF] shall deny any provider claim for services that fail to meet *criteria established by [DHCF]* concerning medical necessity appropriateness." Utah Code Ann. § 26–18–2.3(1) (1989) (emphasis added). Given the similarity of this statutory language to the explicit statutory grant of discretion cited in *Morton*, we hold that the legislature has, by virtue of section 26–18–2.3(1), explicitly granted DHCF discretion to establish criteria concerning Medicaid reimbursement.[2] Thus, we review DHCF's decision denying Medicaid reimbursement for medical care that South Davis provided Romero for the period of August 1, 1989 to October 31, 1989 for reasonableness and rationality.

## ANALYSIS

■ South Davis assails DHCF's decision on the grounds that (1) the documents that it provided DHCF are equivalent to physician certification, and (2) it should be reimbursed for at least the cost of the care it rendered. DHCF responds that because its decision is reasonable and rational, this court should uphold that decision.

In accordance with federal law, Utah has adopted the Medical Assistance Act, Utah Code Ann. §§ 26–18–1 to –305 (1989 & Supp. 1993), which provides in pertinent part:

> [DHCF] shall implement and utilize cost-containment methods, where possible, which may include, but are not limited to:
>
>     . . . .
>
> (b) preadmission certification of non-emergency admissions. . . .

Utah Code Ann. § 26–18–2.3(2) (1989). The act further provides that DHCF shall establish a program to safeguard against unnecessary and inappropriate use of Medicaid funds. Utah Code Ann. § 26–18–2.3(1) (1989). Accordingly, DHCF has promulgat-

ed administrative rules which further delineate "preadmission certification." The purpose of the preadmission requirement is "to ensure that certification for placement and reimbursement of nursing care facility services or for a State institution for acute care is given prior to placement." Utah Admin.Code R455–9–1(A)(3) (1990). Under the precertification requirement, a "physician consultant will certify the need for inpatient services at the time the determination is made of the patient's/resident's level of care. The physician consultant will recertify the patient's/resident's continued need for inpatient nursing facility care/services at the determined level of care at least every 60 days after certification." Utah Admin.Code R455–9–19(A) (1990). Thus, such certification must be done by a physician before a patient is eligible for Medicaid reimbursement. Utah Admin.Code R455–9–1(A)(3) (1990). In other words, under the applicable DHCF rules, in order to be eligible for Medicaid reimbursement the provider must *first* obtain physician certification.

Moreover, these rules were promulgated to meet federal regulations requiring states to adopt state Medicaid plans to provide methods and procedures to safeguard against unnecessary utilization of care and services by Medicaid providers and to assure that payments to those providers are consistent with efficiency, economy, and quality of care. *See* 42 U.S.C. § 1396a(a)(30)(A) (1992). As a central part of this federal utilization review program, Congress has mandated that whenever a Medicaid patient is admitted to either a nursing home or a hospital, a physician must certify that the services being provided to the patient are required because the patient needs such services. 42 U.S.C. § 1396a(a)(44)(A) (1992). Further, Congress has mandated that patients receive physician recertification at least every sixty days after admittance to such care. 42 U.S.C. § 1396b(g)(6)(A) (1992). Absent such measures, a state will lose federal Medicaid fund-

---

**2.** Moreover, since the Medical Assistance Act also gives DHCF the general responsibility of "implementing, organizing, and maintaining the Medicaid program," § 26–18–2.1, the act must be viewed as also granting DHCF implicit discretion to administer and interpret the Medical As-

sistance Act. *See Putvin,* 837 P.2d at 590–91 (holding that since Utah Code Ann. § 59–12–118 (1992) contains a grant of discretion to Tax Commission to administer tax code generally, Tax Commission's decision in that case should be overturned only if unreasonable).

ing. *See* 42 C.F.R. § 456.1 (1992); *Commonwealth of Va. ex rel. Va. Dep't of Medical Assistance Servs. v. Bowen,* 683 F.Supp. 148, 153 (W.D.Va.1988) (federal government must reduce amount of financial participation if physician certification or recertification requirements are not met).

■ In the case at bar, South Davis did not submit a physician certification prior to Romero's admission to acute care and never obtained physician recertification at any time during Romero's three-month stay in acute care. Thus, given Utah Admin.Code R455–9–19(A) (1990) and 42 U.S.C. §§ 1396a(a)(44)(A) and 1396b(g)(6)(A) (1992), we cannot say that DHCF's determination that the lack of physician certification or recertification for the period in question prevented it from legally authorizing Medicaid reimbursement was unreasonable or irrational.

■ Nevertheless, South Davis claims that by providing the agency, and now this court, with physician and nurse records showing that Romero *could* have been certified, it meets the certification requirement. However, this argument ignores the fact that DHCF's rules demand *pre*admission, Utah Admin.Code R455–9–1 (1990), something South Davis, by its own admission, never obtained. Moreover, mere delivery of records without a physician certification places the onus of determining whether such records are the equivalent of physician certification on the agency, and this court, which must then attempt to divine the physician's intent. Thus, South Davis's providing such records after the fact in an attempt to circumvent the rule does not meet the preadmission certification requirement, and would

violate federal law. Accordingly, this claim is without merit.[3]

■ Alternatively, South Davis argues that even if DHCF reasonably denied reimbursement to it at the higher level of acute care, it should nonetheless be reimbursed for the level of skilled care that it provided Romero from August 1, 1989 to October 31, 1989. This argument fails for two reasons. First, the record does not indicate that Romero's care amounted to the lower skilled level of care. Second, even if it did, because South Davis did not meet the precertification and recertification requirements, which exist regardless of whether the applicant provides skilled or acute care, South Davis has no basis for reimbursement at any level. Thus, DHCF reasonably denied reimbursement to South Davis at the lower skilled level of care.[4]

■ Lastly, South Davis claims that denying it reimbursement is tantamount to a forfeiture, an action not favored at law. Forfeiture is defined as a "comprehensive term which means a divestiture of specific property without compensation; it imposes a loss by the taking away of some preexisting valid right without compensation." Black's Law Dictionary 650 (6th ed. 1990). In the present case, DHCF is not divesting South Davis of property, but rather denying an application for reimbursement for services rendered based on South Davis's failure to obtain the necessary precertification and recertification. Under these circumstances, the denial of South Davis's application cannot be viewed as the equivalent of taking away property.[5] This is especially true in light of the fact that it was South Davis's own actions that led to DHCF's denial of reimbursement. If South

---

3. It should be noted that while DHCF reasonably refused to reimburse South Davis for the care provided from August 1, 1989 to October 31, 1989, it has reimbursed South Davis for the skilled level of care provided to Romero after November 1, 1989, for which South Davis submitted preadmission certification.

4. Further, to permit South Davis to seek reimbursement at the higher acute level, and then when such attempt fails to seek reimbursement at a lower level, essentially allows South Davis two bites of the proverbial apple. This is in clear violation of DHCF's rule that "[n]o applicant/re-

cipient shall be approved for a more intense level of care if, as a practical matter, all his/her care and treatment needs can be met at a less intense level of care." Utah Admin.Code R455–9–28(E) (1990).

5. Thus, the cases from other jurisdictions that South Davis cites for the general proposition that forfeiture is not favored at law are inapplicable to the case at bar, in that they address instances in which the government sought to divest defendants of personal property in the defendants' physical possession.

Davis had obtained the necessary physician certification and recertification and provided the appropriate level of care, as it is currently doing, DHCF would have reimbursed South Davis, as it is now doing. To hold that the denial of reimbursement based on one's own inaction amounts to a forfeiture would emasculate DHCF's requirements, which we have heretofore determined are reasonable and rational. Therefore, we refuse to do so.

## CONCLUSION

We hold that DHCF reasonably denied South Davis's request for reimbursement for care provided to Romero for the period of August 1, 1989 to October 31, 1989. Accordingly, we affirm.

BILLINGS and GREENWOOD, JJ., concur.