**STATE of Utah, Plaintiff and Appellee,**

v.

**Ross GALLEGOS, Defendant
and Appellant.**

No. 920762–CA.

Court of Appeals of Utah.

March 3, 1993.

was thereafter involved in four police-monitoring drug transactions with defendant.

On January 10, 1991, Bennett met with police officers who gave him money to buy drugs. They also fitted him with a concealed microphone. Bennett then went to defendant's residence. Defendant was not home, and his girlfriend directed Bennett to a nearby motel. Bennett met defendant at the motel and asked if he had any marijuana to sell. Defendant responded that he did not have any marijuana on him, and requested that Bennett drive him to another location where he could obtain the drug. Bennett paid defendant $60 and drove him to the other location. Defendant got out of the car, went into a house, and returned a few minutes later with a bagful of marijuana that he gave to Bennett.

About a week after the first transaction, Bennett was again given money to purchase drugs and fitted with a concealed microphone. Bennett contacted defendant and said that he was looking for a "quarter ounce of weed." Defendant then sold Bennett some marijuana for $80.

Shortly after the second transaction, Bennett was again given money to purchase drugs and fitted with a concealed microphone. Bennett went to defendant's home and asked if he could buy some cocaine. Defendant responded by asking, "[w]hat do you need, a quarter [ounce]?" Bennett said "yes," and handed defendant $300. Defendant took the money and indicated that he would go get the cocaine and drop it off to Bennett later that night. Bennett did not hear back from defendant that night.

Bennett and the police arranged another contact as a result of defendant's failure to deliver the cocaine. Bennett went to defendant's house and defendant explained that he had tried to deliver the cocaine but Bennett was not home. Defendant claimed that after trying and failing to deliver the cocaine, he and a friend had consumed it. Defendant assured Bennett that he would make it up to him, and that he would go get some more cocaine. Bennett then asked defendant if he had any marijuana as partial payment of the $300. The two

Randall T. Gaither (argued), Salt Lake City, for appellant.

Jan Graham, State Atty. Gen. and J. Frederic Voros, Jr., Asst. Atty. Gen. (argued), Salt Lake City, for appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BENCH, Judge:

Defendant Ross Gallegos appeals his conviction for four counts of distributing, or arranging to distribute, a controlled substance in violation of Utah Code Ann. § 58-37-8(1) (1990). We affirm.

## FACTS

In September of 1990, Greg Bennett approached the Provo City Police Department and offered to serve as a confidential informant in exchange for money. Bennett gave the police several names of potential drug sellers, including defendant. Bennett

walked to a nearby motel where defendant retrieved a bag of marijuana and handed it to Bennett. Defendant again promised to bring Bennett some cocaine.

As a result of these transactions, defendant was charged with one count of distributing, or arranging to distribute, a controlled substance (cocaine) in violation of Utah Code Ann. § 58-37-8(1)(a)(i) (1990); and three counts of distributing, or arranging to distribute, a controlled substance (marijuana) in violation of Utah Code Ann. § 58-37-8(1)(a)(ii) (1990).

Defendant brought a pretrial motion to dismiss the charges on the ground that he was entrapped. The trial court denied the motion stating, in pertinent part:

> [It] [a]ppears to the Court that the only, taking the evidence most favorable to the state, while there was an acquaintance and a marginal friendship between the defendant and Mr. Bennett, all Mr. Bennett did was ask for the defendant to procure him some marijuana and cocaine on the one occasion; that the defendant readily responded affirmatively that he would do so, and on three occasions did obtain some marijuana, and promised to do it with respect to cocaine.
>
> It doesn't appear to the Court that that constitutes entrapment as a matter of law. Consequently, the motion will be denied.

After the jury went into deliberations, defendant renewed his motion for dismissal based on entrapment. The court denied the motion again, concluding that after hearing the evidence it could not rule as a matter of law that defendant was entrapped. The court indicated that since it could not decide the issue of entrapment as a matter of law, it was a question properly reserved for the jury. The court also declined to give defendant's proposed jury instruction on entrapment.

The jury determined that defendant was not entrapped, and returned a verdict of guilty on all counts. The court subsequently denied an objection by defendant to the penalty enhancement based on prior convictions, and sentenced defendant to one indeterminate term of five years to life

and three indeterminate terms of one to fifteen years, with all four terms to run concurrently.

## ISSUES

Defendant argues on appeal that (1) the trial court erred by rejecting his claim that he was entrapped as a matter of law; (2) the trial court erred by not giving his proposed jury instruction on entrapment; and (3) the trial court erred by enhancing his sentences based on prior convictions that were pending on appeal at the time of sentencing.

## STANDARDS OF REVIEW

■ Defendant first challenges the trial court's rejection of his claim that he was entrapped, as a matter of law. We must therefore determine whether the trial court properly identified and interpreted the law regarding entrapment when it ruled that the law did not require a finding that he was entrapped. This clearly presents a question of law. *See State v. Salmon*, 612 P.2d 366, 369 (Utah 1980); *see also State v. Richardson*, 843 P.2d 517, 522 (Utah App. 1992) (Bench, P.J., concurring) (whether trial court properly identified and interpreted the law presents a question of law). "When a challenge to a trial court's decision concerns a question of law, we accord no particular deference, but review for correctness." *State v. Duncan*, 812 P.2d 60, 62 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991).

■ Defendant also challenges the trial court's refusal to use his jury instruction regarding entrapment. A decision by the trial court not to give a proposed jury instruction presents a question of law, which we review for correctness. *State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992). It is within the trial court's discretion, however, to select between two accurate but different jury instructions. *State v. Pedersen*, 802 P.2d 1328, 1332 (Utah App.), *cert. denied*, 815 P.2d 241 (Utah 1990).

■ Finally, defendant's third issue presents us with a question of statutory con-

struction. That is, does Utah Code Ann. § 58-37-8(1)(b), provide for enhancement of a sentence when a prior conviction for the same offense is pending on appeal. Statutory construction presents a question of law, which we review for correctness. *Duncan*, 812 P.2d at 62.

## ANALYSIS

### Entrapment

Defendant argues that the trial court improperly identified and interpreted the law of entrapment when it failed to consider the propriety of the police conduct in utilizing a convicted felon and known drug abuser as an informant.[1] Defendant further claims that the operation involving Bennett was not adequately set up, monitored, or controlled by the police department. Defendant maintains that this improper use of Bennett and other improper police conduct induced him into committing the crimes for which he was convicted, and that this court should not condone such police conduct.

We are called upon to determine whether the government's relationship with an informant constitutes a factor to be considered in defendant's entrapment defense. The entrapment defense is found in Utah Code Ann. § 76-2-303(1) (1990), and provides, in pertinent part:

Entrapment occurs when a law enforcement officer or a person directed by or acting in cooperation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

In *State v. Taylor*, 599 P.2d 496 (Utah 1979), the Utah Supreme Court interpreted subsection 303(1) and determined that the legislature had adopted an objective standard for determining when entrapment has occurred. The court stated that "[u]nder the objective view of entrapment, the focus is not on the propensities and predisposition of the specific defendant, but on whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power." *Id.* at 500. The court further stated that:

In assessing police conduct under the objective standard, the test to determine an unlawful entrapment is whether a law enforcement official or an agent, in order to obtain evidence of the commission of an offense, induced the defendant to commit such an offence by persuasion or inducement which would be effective to persuade an average person, other than one who was merely given the opportunity to commit the offense.

*Id.* at 503.

This court recently addressed a very similar challenge to the propriety of using convicted felons and known drug abusers as informants. In *State v. Richardson*, 843 P.2d 517 (Utah App.1992), the police used a convicted felon on parole, who was a known drug abuser, as a confidential informant. Faced with a possible revocation of his parole for drug related parole violations, the agent volunteered to provide information about drug activities. The agent provided names of drug traffickers and agreed to "set up" other individuals involved with drugs. When the agent first went to Richardson's home, he consumed heroin with Richardson and his wife. The agent subsequently contacted Richardson and asked if he could buy more heroin. The agent proceeded to Richardson's house where he purchased some heroin and then delivered it to detectives. The trial court denied Richardson's motion to dismiss based on entrapment and Richardson pleaded guilty to attempted unlawful distribution of a controlled substance. On appeal, Richardson did not claim that the interaction between the agent and himself consti-

---

1. Bennett was convicted in 1989 for writing bad checks and for selling cocaine. There were other charges pending against Bennett during the investigation, including a DUI allegedly committed during the course of the undercover operation. At the time of the trial, Bennett was in prison as a result of parole violations.

tuted entrapment. Instead, Richardson urged that he was entrapped because the government used a convicted felon and known drug abuser as an informant, and the government's conduct towards the informant was so outrageous that the conviction should be reversed.

This court examined the law pertaining to the defense of entrapment and stated that:

Under Utah law, therefore, the statutory entrapment defense is available *only* if there is impropriety by the government in its *contacts with defendant,* to the extent that an ordinary person in defendant's situation would be induced to commit a crime. *The relationship evaluated in an entrapment defense claim must directly involve the government and the party claiming to be entrapped.*

*Id.* at 520 (emphasis added) (footnote omitted). The court concluded that the government's conduct with respect to the agent did not taint the agent's contact with Richardson. The agent knew that Richardson was involved in illegal drug activity prior to any contact made by the agent, and the agent did not "employ inducements which would have caused an ordinary person to engage in criminal activity." *Id.*

■■■ As *Richardson* makes clear, the entrapment defense focuses not on the government's relationship with the informant, but on the government's relationship with the defendant. In the instant case, defendant willingly supplied drugs at Bennett's request. At no time in any of the transactions did Bennett employ inducements that would have been, as a matter of law, sufficient to induce an ordinary person to commit the crimes for which defendant was convicted. Consequently, any alleged impropriety between the police and Bennett did not taint defendant's relationship with Bennett.

We conclude that the trial court properly defined and interpreted the law regarding entrapment. The trial court was therefore correct in rejecting defendant's claim that as a matter of law he was entrapped. Consequently, the trial court did not err in forwarding the question of entrapment to the jury. *See State v. Udell,* 728 P.2d 131, 133 (Utah 1986); *Salmon,* 612 P.2d at 369.

### Jury Instructions

Defendant complains that the trial court erred in not giving to the jury his proposed instruction on entrapment. Defendant argues that his jury instruction properly stated the law and focused on the objective nature of the entrapment defense. He further argues that the instruction actually used by the trial court (Instruction 18) misstated the law of entrapment and improperly focused on defendant's propensity to commit the crime.

■■■ "A trial court has a duty to instruct the jury on the law applicable to the facts of the case." *State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992). While a defendant has a right to have his or her theory presented to the jury, it is not error for the trial court to refuse a proposed instruction if the law is properly covered in other instructions. *Id.*

■■■ Defendant's proposed instruction appears to be an accurate, if brief, statement of the law. It is within the trial court's discretion, however, to select between two accurate but different jury instructions. *State v. Pedersen,* 802 P.2d 1328, 1332 (Utah App.) (so long as the instruction given was appropriate, an appellate court "need not consider whether defendant's proposed instruction might also have been proper or even preferable"), *cert. denied,* 815 P.2d 241 (Utah 1990). Our inquiry therefore must center on the jury instruction actually used and determine whether it accurately states the law. So long as the jury instruction used was accurate, it was not error for the trial court to refuse a different instruction that was also accurate.

The first paragraph of Instruction 18 restates verbatim the statutory provision on entrapment. The second paragraph quotes applicable language from several Utah decisions on entrapment: *State v. Moore,* 782 P.2d 497, 501 (Utah 1989); *State v. Udell,* 728 P.2d 131, 132–33 (Utah 1986); *State v.*

*Taylor,* 599 P.2d 496, 503–04 (Utah 1979); and *State v. Wright,* 744 P.2d 315, 317–18 (Utah App.1987). This language instructed the jurors to focus on the course of conduct between the government representative and defendant, and determine whether the police conduct was such that it created a risk that a normal person would be induced to commit the crime. The remainder of Instruction 18 instructs the jury that if they find the defendant was entrapped, or if there was a reasonable doubt as to whether defendant was entrapped, they should return a verdict of not guilty. On the other hand, the jury should return a verdict of guilty if the jury determined beyond a reasonable doubt that defendant committed the crimes and that his conduct was not the product of police methods that created a substantial risk that a normal citizen would have acted in the same way.

We conclude that Instruction 18 comprises a complete and accurate statement of the law regarding entrapment. Inasmuch as Instruction 18 properly and fully states the law on entrapment it was not error for the trial court to use it instead of defendant's instruction.

### Enhancement of Sentences Based on Prior Convictions

■ Defendant argues that the trial court erred in enhancing his sentences one degree based upon prior convictions that were pending on appeal at the time of sentencing.[2] This issue presents us with an issue of first impression in this state. Defendant's sentences were enhanced one degree under Utah Code Ann. § 58–37–8(1)(b)(i) & (ii) (1990), which provides:

> (b) Any person convicted of violating Subsection (1)(a) with respect to:
>
> (i) a substance classified in Schedule I or II is guilty of a second degree felony and upon a second or subsequent conviction of Subsection 1(a) is guilty of a first degree felony;
>
> (ii) a substance classified in Schedule III or IV, or marijuana, is guilty of

a third degree felony, and upon a second or subsequent conviction punishable under this subsection is guilty of a third degree felony;

Defendant argues that since his prior convictions were pending on appeal at the time of sentencing, the instant sentences cannot be considered "second or subsequent" as required for enhancement.

We are governed by the principle that "[w]here statutory language is plain and unambiguous, this Court will not look beyond to divine legislative intent. Instead, we are guided by the rule that a statute should be construed according to its plain language." *Allisen v. American Legion Post No. 134,* 763 P.2d 806, 809 (Utah 1988).

The statutory language in question is clear and unambiguous. All that is required to invoke section 58–37–8(1)(b), and enhance a defendant's sentence, is that there be a prior conviction for the same offense. The statute does not say that only a conviction that has been affirmed on appeal may be used to enhance a sentence. For purposes of the statute therefore, a conviction is a conviction regardless of whether it is pending on appeal at the time of sentencing for a "second or subsequent" offense. *See Duncan,* 812 P.2d at 62 ("When applying a legal and technical meaning, 'conviction' refers to the final judgment entered on the plea or verdict of guilty.").

Defendant argues, however, that if his sentences are enhanced based upon prior convictions currently pending on appeal, there is no remedy for reducing the sentences should the prior convictions be overturned. We disagree. If defendant's prior convictions are overturned on appeal, he would have the right to petition the trial court for resentencing in this case. *See United States v. Mackbee,* 894 F.2d 1057, 1058 (9th Cir.1990); *see also* Utah R.Civ.P. 22(e) ("[t]he court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time"); *State v. Babbel,*

---

**2.** This issue is not moot because the prior conviction remains pending on appeal. *See State v.*

*Gallegos,* No. 890513–CA.

813 P.2d 86, 87–88 (Utah 1991) (a trial court has continuing jurisdiction to correct an illegal sentence), *cert. denied,* —— U.S. ——, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992); *State v. Lee Lim,* 79 Utah 68, 74, 7 P.2d 825, 827 (1932) (same).

We conclude that for purposes of penalty enhancement under section 58–37–8(1), all that is required is that there be a prior conviction for the same offense. Therefore, a sentence may be enhanced based on a prior conviction regardless of whether that conviction is pending on appeal at the time of sentencing.

## CONCLUSION

The trial court properly rejected defendant's claim that he was entrapped into distributing or arranging to distribute drugs as a matter of law. We also conclude that it was not error for the trial court to refuse defendant's proposed jury instruction on entrapment. Finally, we conclude that defendant's sentences were properly enhanced as a result of his prior convictions. Affirmed.

BILLINGS and ORME, JJ., concur.